All rise. The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and his Honorable Court. Good morning. We have two cases on for argument today. The first case is number 2009-1316, Lassmer Industries v. Department of Defense. Mr. Copley, when you're ready. Please report. I am Mr. Copley. I'm representing... It's Copley, is it? Copley, yes, Your Honor. It's Copley in Boston. Copley in Boston, exactly. I'm here representing the appellant to Lassmer Industries. This is an appeal from the Armed Services Board of Contract Appeals decision, finding that at first they had jurisdiction over this appeal and that they were divested of jurisdiction on the basis of the government rescinding its original actions against Lassmer. This case goes back to and starts with a letter dated February 11, 2008. That letter is page 21 of our appendix, but it's basically a letter from a person identifying herself to be the contracting officer under 16 separate contracts and delivery orders. Let me see before we get into the details of the various letters. Your claim, I take it, is, claim bad word, your submission is that what we're dealing here with is a claim by the government, not a claim by the contractor. Is that fair? Actually, there's two arguments. One is that there's a claim by the government, and secondly, there was a request by the contracting officer in response to the claim by the government that they issue a final decision. I understand that, but the second request, I did not understand your brief to suggest that that itself was a claim. Is that your contention? Yes, Your Honor. There's a case in controversy, if you will, that flows from the contracts, and that is whether or not Lassmer delivered non-conforming goods under these contracts. And that pertains not just to the 3,100 remaining products, but also to all the previously delivered products? That is correct, Your Honor. And so you say that is a claim under the CDA? It is a claim for two reasons. One, there's the government assertion that they were non-conforming goods. There's the contractor's reaction saying, we dispute that, and we would like a final decision because we believe that the specifications were defective, that they were impossible to comply with, not just for us, but for other contractors, thus creating a dispute, a non-monetary dispute, just as this Court has viewed in other cases. For example, Garrett v. General Lefferton, that particular case, this Court held that the courts and the boards do have jurisdiction over non-monetary disputes. Again, the way I've framed it for you, Your Honor, is the dispute here is not one of money. It is, did we or did we not deliver conforming goods? And that dispute did not start with Lassmer inquiring. It started with the government making the affirmative assertion that they were non-conforming goods. I'd just like to follow up on Judge Bryson's questions because I'm having some difficulty in identifying where you might have made a claim for the 3,100 units that have not yet been delivered. Now, looking at the letter of March 2, 2008, the first paragraph contains the request that the government issue a final decision on all contracts under which it asserts claims pursuant to that letter. So it seems to me that's a reference to the earlier letter, the February 11, 2008 letter, where the government is asserting a claim. That's correct, Your Honor. That's the lead-in paragraph. To go back to the original letter, the February letter from the government, it goes paragraph by paragraph, contract by contract, and asserts specific deficiencies or defects in parts. Right. But that's all with respect to past conduct and past products delivered. There is also, I believe it's the second or third paragraph of the February 11th letter that asserts that with respect to the delivered portion of the now undelivered delivery order 15, that those parts were defective in that they failed to meet the reflection requirement, the deflection requirement in the contract. Just to be clear, delivery order 15, some of the order was filled and another portion remains unfilled. To this day. That's correct, Your Honor. So with respect to the defects, that was with respect to what had already been delivered, that one portion, not with respect to what hadn't been delivered yet. That is correct, Your Honor. The part that hadn't been delivered cannot be delivered because there is an impossible specification to comply with. So for LASMA to deliver those parts still failing that performance specification would, number one, it would be a waste of resources to deliver the part, to have manufacturing deliver it, number one. Number two, the dispute is well defined between the parties already. It would simply be someone throwing salt on the wound, if you will. LASMA has been debarred for delivering those parts in their defective state, which, although they dispute, turn around and just deliver them again with the same default, if you will, or defect. Well, the government wasn't suggesting in its letter of February that you ought to be delivering those, right? I mean, this is four years later, five years later. The government has held LASMA accountable for the non-delivery of those parts throughout. Yes, sir. They have reported it. What is your position on the status of those 3,100 parts? Does your client believe that it is under contract and therefore is obligated to produce those parts? It believes that it's excused from doing so. The government believes that they're under obligation to deliver them. The government is reporting them as delinquent for having failed to deliver them. The government is refusing to terminate that portion for convenience or for default or otherwise. The government's insistence that we're reactive. Where is that in the February 11th letter? In the February 11th. That is not in the February 11th letter. In the February 11th letter, that just had to do with the portion that had already been delivered, right? I assume you got paid for the portion that was delivered and their claim for $5 million was to get reimbursed. So there's nothing in the February 11th letter with respect to the parts that were never delivered, right? Yes, that's correct, Your Honor. It says only delivered and then the amounts that were delivered. In our March 2nd letter, we go back and say we find your February 11th letter to be tantamount to a rejection of the parts. Of all the parts already delivered? All of them. That's correct. Your Honor, the reason for that is if you look at the government's letter on February 11th, they are asserting $4.8 million because of all those parts delivered. They are attempting to do exactly what was done in the Garrett case. But the $4.8 million does not include the pricing for the undelivered 3,100 units, correct? That's correct. So that letter is all talking about past products, past delivered components. That's correct. Again, I'm having difficulty with respect to the 3,100. And your letter then says we want a final decision on the first letter, the February 11th? February 11th. And you don't go on to say, and what's more, we want a decision with respect to the outstanding goods, right? Your Honor, on the second page of our March 3rd letter, at the very top, it says in the course of formulating the final decision, WASMA requests the government to respond to whether the specifications were found to be defective or not, and whether the goods tendered by other contractors with the same or similar alleged defects were accepted or rejected by the government. How does that address the 3,100 non-delivered goods? That seems to me to be directed at the goods that are the subject of the government's letter. Also, let me read this and then I'll answer that question. In the third paragraph, we say we view your letter as an attempt to reject the goods and terminate WASMA under the contracts for default. Here you have a yet-to-be-delivered 3,100 items. The government is saying that the original ones that were delivered were defective. The response from WASMA is yes, but there's a defective specification that you can't comply with, and nobody can. And we are saying we view your letter to be a termination and to be a rejection, delivered or undelivered. And we request, in all fairness, beyond what was done on the second page of this letter, what can a contractor do to communicate with a contracting officer to try to get a defective specification addressed, if you will? This is not a case where the contracting officer came back and said, we would like some clarification of your March 3rd letter, we would like some additional information. They simply did nothing. They ignored the letter. WASMA appealed to the Armed Services Board of Contract Appeals on the basis, therefore, of a deemed denial. And there's a request for a final decision, and there was no final decision issued. The Armed Services Board of Contract Appeals has jurisdiction, in our theory, on the March letter in and of itself. Now, the ASPCA never issued a ruling that it had jurisdiction pursuant to the March 2nd letter and pursuant to a deemed denial, but we believe they should have issued that. And we would ask as part of a remand here that they be directed to, at least at a minimum, address whether the March 2nd letter did bestow jurisdiction on them, and if not, or if you feel compelled, that you direct them that it does. I guess I'm having trouble following that based on the first paragraph of the March 2nd letter. I mean, the March 2nd letter is a request for a final decision, and in the first paragraph you say, we request the government to issue a final decision on all contracts under which it, meaning the government, asserts claims pursuant to that letter. So the government's claims pursuant to that letter were for $4.8 million. That was the money the government paid for the products that were delivered, not the ones that hadn't been delivered, were delivered. And so if the final decision is March 2nd letter, I mean, you may ask for other stuff, in terms of it would be nice if the government did this, this, and this. But in essence, the request for final decision deals with the government's claim for $4.89 million, right? Well, all due respect, it also has another claim under there, the government's claim. There is an affirmative claim that these are non-conforming parts. It's not just the money. They are basically saying, just as in Garrett, remember in Garrett all the engines had been accepted and were placed in service, and I believe it was the Navy came back and attempted to rescind their acceptance. The same is true here. All of these parts that were delivered had been accepted on a duty form 250 by the government. This letter is more than just saying you owe the $4.8 million. This is an assertion of government rights under the contract, that they have the right to do what they're doing. Now, this court in Garrett said there was such an extraordinary contract administration issue to go back after such a long time and try to rescind, that it was, quote, tantamount to a government claim. Just the action of taking that contract administration issue. And so when we go back and we ask for clarification, it's not just the $4.8 million that we're focused on. The other things that we're referring to are things that the government introduced in their initial letter. Let me ask you one quick question before time runs out. The government, in its brief, footnote 8 on page 15, refers to the fact that another appeal was filed before the board concerning the unfilled portion of delivery order 15. The appeal filed September 16, 2009. Is the government correct? The government is correct, and the reason for that, Your Honor, is after the ASPCA ruled that it did not have jurisdiction, we did two things. One, we filed this appeal. Because we believe that the ASPCA did have jurisdiction over the issue. But secondly, as a matter of conservative approach, if this court disagrees with us two years later, we've done no service to Lassner. We did file the additional, and I would call it just an appeal that's attempting to save. A prophylactic appeal. A prophylactic. Thank you, Your Honor. In that appeal, then, you have made, I take it, something that is, at least in your view, plainly a claim with respect to those undelivered goods. The issue is not at least presented in the same fashion of the problem of whether there's a claim here by the contractor. In your appeal, in your September 16, 2009 appeal. Again, it really is prophylactic. We're attempting to, in the event that this court disagrees with us and rules that we didn't do it properly to begin with, then we have submitted that appeal. We do not believe that that is at all dispositive of this appeal. What would you be unable to get in that appeal that you think that you're entitled to and ought to be able to get in this appeal? I mean, if we were to reverse in this case, we would be sending it back to the Board of Contract Appeals, which would then have two appeals, one making claims for what seemed to be essentially the same relief. How is your relief in this proceeding more valuable to you than the relief that you expect to obtain in the other proceeding? If this court were to reverse, the other one would be moot. I understand, but suppose, setting aside the question of mootness, what I'm getting at is, what are we doing here? Does this have any practical impact on Elasmin? It does. What? They have been debarred from government contracts since 2005. They've had relief on that. They're no longer on administrative debarment, but they are for all intent and purposes debarred. They're not getting any government contracts because the government is repeatedly taking the position that these goods were non-conformity. Okay, but how would your winning this case put you in better position than if you win the September 2009 case with respect to debarment consequences, downstream consequences? I mean, presumably, your case isn't any stronger or weaker when you get to the BCA between the two cases, is it? I mean, is there anything about this case that makes it a better vehicle than the 2009 case? You see where I'm going with this? It'll be resolved faster, I'll tell you that. Well, maybe not. I mean, if we take a while to decide this case, send it back to the BCA, it presumably goes back in the queue, right? Well, actually, can I insert my own question? Sure. Because I thought I knew the answer to your question, and I'm not getting it, so I'm obviously missing something. It seemed to me that the 2009 appeal deals only with this one particular portion of the 15, and what you're seeking in this case would be an adjudication of the conformance or non-conformance of all the stuff that was at issue in the $4.9 million contract. Am I wrong or right about that? That this would be a broader adjudication of numerous other issues that go beyond that one portion, the unfilled, I mean, I assume there are all kinds of non-conformance with all kinds of different products, right? Yes, Your Honor. But the core issue in both cases, is it not, is the question of the adequacy of the specifications. I would say yes, Your Honor. And so a resolution of that issue in the September 2009 case would resolve that essentially for all purposes, right? I don't believe so, Your Honor. The 2009 case really is specific to delivery order number 15. The ASPCA took the position in their very last decision that they only viewed themselves to have jurisdiction over all delivered parts. So the appeal we're here on today, it is our belief that the government made an affirmative claim that all of these parts were non-conforming. It has never rescinded that claim. It has never said, we take that back. And so how does that affect a contractor going forward? Just as the court has said in other cases involving the performance review which we cited in our brief, anything that has to do with performance under a contract can materially affect a contractor. And I'm here to tell you it's materially affecting this contractor because they've not been able to get government contracts because of this record. And they've never had a CDA resolution of that issue. No one has ever adjudicated that Lassner breached any contract. That's never been adjudicated. They were debarred for having a history of breaches that they were never given a final decision on to go to the Armed Services Board of Contract Appeals or the Court of Claims and ask yourselves this, Your Honor. As soon as the government did issue that decision and they got into the ASPCA, the government withdrew its entire claim of $5 million and said, well, we think we're going to lose. What they didn't rescind was the overarching issue. Were the goods conforming or were they not? This is a contractor that has 16 contracts with the federal government, each of which are subject to a Contract Disputes Act, and they've not been able to get that adjudicated. Very quick question and then I'll let you sit down. Is the specification issue with respect to the 3,100 items the same as the specification issue with respect to all the other contracts? No, Your Honor. It's idler arms, and you can categorize some of the contracts by idler arms and others are ball joints. It's the idler arm issue. So when you refer to the specification problem in your letter, since the letter is responding to the government's letter that does not address the 3,100, then your references to the specification problem do not include a reference to the specification problem with respect to the 3,100, right? Yes. Remember, they were idler arms delivered. So yes, it does address that issue as well. Yes, but it addresses others. If you look at the government's letter in February 11th letter, it goes through paragraph by paragraph and states what the government believed were the defects. It doesn't go by specification number. It just talks in terms of a narrative, if you will. Okay. Thank you, Mr. Copley. We'll hear next from Mr. Phelps. Is that right? Yes, Mr. Phelps. Thank you. May it please the Court. The Board properly dismissed this appeal because there was no pending claim before it. The only claim that the Board had before it was unequivocally revoked with the government's letter of November 18th, 2008.  There were no additional claims presented by LASMR. LASMR, as the Court has noted, has stated in their letter they were seeking a request for a final decision from the Board on what they viewed as a claim from the government. Mr. Phelps, with respect to the 3,100 undelivered idler arms, what is the government's position? Is the government waiting for those idler arms? There is a pending dispute right now in front of the Board, Your Honor, dealing with the 3,100 idler arms. That's the September 2009? Yes, Your Honor, that is it. But this has been hanging there for over three years? There have been attempts to resolve this issue, whether to deliver or cancel. Those attempts have been thwarted. There wasn't any resolution, thus it went to the Board. All of those issues will be determined in the Board's decision on this issue. Let me try it a different way. Does the government want those 3,100 idler arms from this contractor? Your Honor, I'm not certain whether the government wants them or not. There were attempts by the government to cancel that portion of the contract, but what they had proposed wasn't accepted by LASMR. Do you consider the unfulfilled portion of Order 15 to be a remaining executory contractual provision? Presently, Your Honor, that's the way the government is looking at it. Until it is resolved before the Board, we're looking at it as such. The Board will resolve whether or not it should be canceled or how it can be canceled or if there's some other sort of remedy available. The government is aware that this portion of the contract is outstanding and would like to resolve the whole issue. There was some question in my mind in looking at the affidavit or declaration of Larry Howard of December 22, 2008. This is the appendix, page 79. And Mr. Howard, who refers that he's the general manager of LASMR Industries, says in paragraph 4 that Delivery Order 15 remains executory. Then he goes on in that same paragraph to say, We provided proof to the government that the idler arm performance spec was impossible to meet. They accepted that proof under a contract where we were the subcontractor. I'm not sure what that means. And he goes on to say, On that same evidence, they granted, for example, the government granted a waiver of the endurance requirement for AM General because it, too, found the specification to be impossible. Is there anything in this record that sheds any light on whether this impossible performance specification has been waived or not? Whether these undelivered idler arms are acceptable or not? Or is all of that just up in the air? There's nothing in this particular record, Your Honor. That issue has been raised before the Board, whether the specification was defective or impossible to perform. So that issue will be addressed in the September 2009 appeal before the Board presently. Whether or not the truth of that, I can't speak to. Whether that specification is or is not impossible, the government has not stated that it is impossible to perform or doesn't contend that LASMR's position on that is accurate. But that issue will be. The whole thing strikes me as rather odd, quite frankly, that you have a relatively small number of component parts for obviously some important piece of machinery, and the government finds it important enough to enter into a contract to provide these things, and the contractor obviously finds it important enough to want to sell products to the government, and yet this issue is sort of hanging there for three years, more than three years. As a little bit of background on that, Your Honor, with the original contracts in the debarment in 2005 from which all of these cases stem, the government sort of forgot about this issue because everything had been addressed in the debarment and there were various problems with the parts. The reason this portion is still outstanding is due to the nature of these contracts and what their four Humvees in the various operations were conducting around the world. It got lost in the shuffle is the best explanation I have for why this is still hanging out there. But knowing that it's still hanging out there, we're trying to resolve it, and we're hoping to resolve all of the issues with the either arm, the 3,100 units outstanding in the appeal before the board. Would it make sense now that it has come to the government's attention that the government would simply refuse to accept those units and move on, in which case the government could then find a suitable contractor and get the parts that it needs and the contractor would get a decision that it could dispute or not? Your Honor, the government attempted to cancel this provision, this portion of the contract, but the terms the government presented were considered unacceptable by LASME. Since they were considered unacceptable, we find ourselves in front of the board again on this 3,100 either arm issue. That paragraph that Judge Lynn was referring to says the government has been reporting delinquent, so that portion of the contract, the government, since 2004. So the government was reporting it as delinquent? Not to my knowledge, Your Honor. To my knowledge, the government, this sort of got lost in the shuffle, this portion, with everything in the debarment. Once it came back to the government's attention, they did their best to correct it, and by correcting it, they were hoping to come to favorable terms with LASME to cancel this for convenience, but those terms weren't considered acceptable. So what LASME are seeking in the other litigation is not just, they want, I assume, the $204,000, but they want the record expunged in terms of their not qualifying. Your Honor, I don't have the docket of the board proceeding before me to say for certain, but I imagine that is a claim in there. A considerable portion of LASME's brief is dedicated to the collateral consequences of the letter that the government sent for purposes of determining whether they're a qualifying contractor or whether debarment should take place or be extended and so forth. What proceedings are available to a contractor to contest a finding if a determination is made that the contractor is not a responsible contractor? What can I do as a contractor to contest that finding? In this instance, Your Honor, when the proposed debarment was presented to LASME in 2005, they had rights under the FAR to present any evidence that they wanted at the debarment proceedings. They were allowed to submit written responses to the government's proposal for debarment. They were also allowed to bring in... Now, who's the debarment proceeding conducted before? The debarment proceeding was conducted before M. Susan Chaddock in this instance, who is a separate and distinct individual from the contracting officer. I'm not sure if I... Yeah, okay. Now, what about a determination, simply a determination that a particular contractor is not a responsible contractor? That presumably is not the same thing as debarment across the board, right? Well, in this instance, Your Honor... Tell me more generally, not just in this instance. Tell me what happens. I'm a contractor, and I get a letter back from the... I express my interest in bidding, and I get a letter back, which says that we've looked into your background, and we see that we've concluded you're not a responsible contractor. What are my options? If this comes up in the context of a contract they're bidding for, there is the bid protest process, where the contractor can come in and say it was arbitrary and capricious because these things were considered and they shouldn't have been considered, and these are the reasons why. And would I get an opportunity to fully litigate in that context the question of whether, for example, the specifications were inappropriately vague or impossible to comply with? In the bid protest context, Your Honor, it would merely be an arbitrary and capricious review, so there wouldn't be independent fact-finding, just as there wouldn't be independent fact-finding for this court in front of the board. The board provides that first pass at the facts of the case. So in the bid protest, if I understand Your Honor's question... What I'm trying to do is just to probe whether there is another proceeding in which LASMR can raise the issues that it is attempting to raise before the BCA in this case. Their contention is not really, or at least the proceeding is subject to such a lenient standard of review that they don't have a realistic opportunity to contest what ultimately is a black mark on the record, and it seems to me that you're saying, well, they've got a point. No, Your Honor, they do have a legitimate arena to contest this. And that is what? Presently, it's the Southern District of Ohio where they are contesting... Right. ...which is the basis of this assertion of non-conformance. Well, yeah, but I guess part of my question is, short of actually debarring a contractor, which I understand happens when you say you're not going to be able to bid on any government contract, is there a course of conduct that the contracting officer can follow in which the contracting officer determines for purposes of this contract I've decided you're not a responsible contractor? That's not, aside from debarring, is that a course that the FAR allows a contracting officer to follow? I am not aware of a specific provision stating exactly what you're suggesting, Your Honor, a sort of broad-based assertion that... Well, I'm asking really about, it's the whole section, FAR 9-104, about the subcontractor or contractor responsibility. My question is, is that a separate category of conduct from the conduct that leads to debarment? Not to my knowledge, Your Honor. Those considerations are brought up in the context... Go ahead. No, those considerations are brought up in the context of a debarring procedure or a finding in a prospective bidding situation where the contractor is said to be not... Well, you say or in a prospective bidding situation. Has the contractor, when the contractor is told that the contractor may not bid on a particular contract because that contractor is not a responsible contractor, has that contractor been debarred such that that contractor is entitled to the full panoply of rights that go with debarment? No, Your Honor, because debarment is a distinct... So there is a separate process... For debarment, Your Honor. ...from being deemed to be a non-responsible contractor with respect to a particular contract. Your Honor, a contractor wouldn't be found to be non-responsible generally. There would be a specific contract or performance... Right, right, I understand, I understand, but what Lassmer's contention is is that there are two bad things that are going to happen here, one of which is the debarment. Well, as to that, you say, hey, the debarment has elaborate procedural protection, so you'll be covered downstream if you have a problem setting aside the facts of this case with respect to the debarment and the extension and so forth. But their second point is, but what's more, will be subject to being found to be not a responsible contractor and therefore subject in a particular contract to being plucked out of the list of eligible bidders without having anything more than the rather skimpy kind of process that goes along with bid protest. Do you agree with that? No, Your Honor, they won't be found to just be non-responsible because of these things. No, no, no, assume that they are found to be non-responsible. Then their only remedy is in the bid protest, is that right? To the best of my knowledge, yes, Your Honor. Which you have acknowledged is not a plenary proceeding, to say the least. No, it is not a plenary proceeding, Your Honor. But in this context, Flassberg has or is presently adjudicating all their claims before various tribunals. They have received what they said they did, which was a fair attempt at litigating their claims. Your Honors, the only basis for the Board's jurisdiction in this case was a claim that was unequivocally rescinded. For that reason, we would ask that the Board's decision be sustained or affirmed. Thank you. Thank you. Mr. Copley, we'll give you a couple of minutes of rebuttal. I think you may have run two minutes of rebuttal. Thank you, Your Honor. If that's true and the government unequivocally rescinds its claim that the goods were non-conforming, then why don't they say that and put that in writing? They won't do that. In fact, the rescission letter specifically reserves the right to say that those goods were non-conforming under the contract. The motion that the government counsel filed with the ASBCA said, at paragraph 5, we have maintained always and still maintain that those goods are non-conforming. Let me ask you this. Suppose that instead of the letter that was sent on February 11th, there had been no letter. Suppose the contracting officer at that point had decided, you know what, we're never going to get this money from them, so to heck with it. Sure enough, another contracting officer, in connection with another contract, had written to that contracting officer and said, what kind of luck have you had with LASMR? The contracting officer said, whoa, LASMR. They didn't provide complying goods for us. Then you wouldn't have had any remedy, right? Well, under the Todd case, I think they would have. You mean when that contracting officer writes to another contracting officer long after your contract has expired, let's say. You finish the contract. It's three years later. One contracting officer writes to your contracting officer and says, what did you think of LASMR's work? Now, there's two answers. You have one contracting officer who is procuring a new procurement. Right. Under section 9, they have an affirmative obligation to determine the responsibility of the contractor. Right. I think that's what you were probing. Absolutely. Of course they're going to talk to the other contracting officer. Okay. That's their job. Okay. What's your remedy if contracting officer number one sends a letter that says, ah, not so good? The Todd construction case says that that's tantamount, that a poor performance report is tantamount to a termination for default for purposes of invoking CDA rights. And the CDA jurisdiction of, in that case, the court claims, but certainly the ASBCA as well. So non-monetary claim that has a lasting effect on a contractor's ability to obtain contracts in the future arises under that contract. That's exactly what's happening in this case. Can I just ask for clarification, though? The debarment proceedings in this case that were not contested included allegations of non-conformance of the goods, right? Your Honor, the debarment proceedings in this case have been contested from the very beginning. They have never had, just so that there's nothing misleading here, they have never had a hearing, they have never had an administrative law judge appointed, which the FAR requires whenever there are issues of fact that the barring official cannot do fact-finding himself. There's never been fact-finding by an administrative law judge. All of that is under review. We're certainly not trying to foist all of that upon you here. All that's under review in the Southern District of Ohio. What nobody can contest is this. There has never been a CDA determination that LASMR ever breached any contract in its history, and it's been doing history with the federal government for decades. There's never been that adjudication. And I'll tell you, the real risk here, and I know this is not before you, but there's a real risk that if we allow the barring officials on their own to issue decisions without hearings, without fact-finding, without the expertise of our administrative law judges, we run a very serious risk that, and I'll put it, use counsel's word, that something falls between the cracks. What fell between the cracks here was procedure. So your answer, Judge Bryce, it's hypothetical where the person gets a call from the next contractor and says, what do you think of the sky? If the response to that is, well, I don't know anything, but why don't you take a look at the record and the debarment proceedings, is your view that that would be improper as well, that that would be a challengeable issue? First of all, the FAR allows them to look at the debarment proceedings for future performance. It allows them to do that. Right, so if the only response was not this was nonconforming and he was, you know, but simply, well, just check out these debarment proceedings and you'll know everything you have to know. Would your answer be the same? If I am contracting officer number one, I'm doing my job. If I'm contracting officer number two, I'm relying upon procedures that we believe are flawed and we are challenging that, and for purposes of this decision, we're not trying to ask you to take that on, for the purpose of this case. What we're saying is that there was a claim under the contract for the very first time on February 11, 2008, that LASMA breached its contract and provided nonconforming goods. And what did it do? It came right back and specifically formally challenged it under the FAR and asked for the first final decision that would have ever been issued in this case. And it's not like the government came back for clarification. They did nothing. All I'm saying is I'm not here to prove the case or the merits of it. I think the ASPCA has jurisdiction over whether all of these alleged nonconformities are in fact nonconformities under the terms of the contract. Very well. Thank you, Mr. Copeland. Thank you, Your Honor. Mr. Phillips, thank both counsel. We take the case under submission.